**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SAMANTHA M. YOUNG )
) No. 15-415
v. )

CAROLYN W. COLVIN

## OPINION AND ORDER

## SYNOPSIS

Plaintiff filed an application for disabled child's benefits, and adult supplemental social security income benefits, based on allegations of various physical impairments. Plaintiff's claim was denied initially, and upon hearing before an administrative law judge ("ALJ"). The Appeals Council denied her request for review, and this appeal followed. Before the Court are the parties Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied.

## OPINION

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3)7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's

findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a <u>de novo</u> review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered.  <u>Palmer v. Apfel</u>, 995 F.Supp. 549, 552 (E.D. Pa. 1998); <u>S.E.C. v. Chenery Corp.</u>, 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947).   Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently."  <u>Brunson v. Astrue</u>, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II.  THE PARTIES' MOTIONS

Plaintiff contends that the ALJ erred in the following respects:  1) in disregarding the opinions of treating and examining providers; 2) in arriving at the residual functional capacity ("RFC"), which Plaintiff contends is unsupported by the record; 3) in disregarding the testimony of the vocational expert ("VE") and relying on an incomplete hypothetical question; and 4) in improperly evaluating her subjective pain complaints.  Plaintiff further argues that the ALJ was biased against her, and thus she did not receive a full and fair hearing.

### A.  BIAS

I first address Plaintiff's contentions regarding the ALJ's alleged bias.  "Due process guarantees a full and fair hearing, with an unbiased judge, such that a record may be constructed containing relevant information regarding a claimant's entitlement to social security benefits."

Klinger v. Barnhart, 2003 U.S. Dist. LEXIS 12218 (E.D. Pa. 2003).  In this context, the

following principles apply:

> [A]dministrative decision makers are entitled to the same "presumption of
> honesty and integrity" as judicial decision makers. … To disqualify a decision
> maker as personally biased, the bias must originate from a source independent
> from the decision maker's participation in the case. …"Furthermore, 'actual bias
> or a high probability of bias must be present before due process concerns are
> raised.'"

Carter v. Astrue, 2012 U.S. Dist. LEXIS 187062, at **19-20 (E.D. Va. Oct. 16, 2012).

Accordingly, intemperate or rude comments do not necessarily infect a proceeding.  Id. at

*20.  In this case, the transcript demonstrates ALJ's conduct towards Plaintiff's counsel was

unnecessarily severe and inhospitable.   The record does not suggest, however, that the ALJ was

biased against Plaintiff or her counsel, in such a way as to infringe on her due process rights.

Instead, the ALJ's opinion offers grounds for his decision unrelated to any potential independent

bias against Plaintiff or her representative.   Nonetheless, I encourage the ALJ to afford Plaintiff

and her counsel appropriate consideration on remand, in order to avoid any appearance of bias

going forward.

### B.  MEDICAL SOURCES

Next, I address the ALJ's approach to Plaintiff's treating and examining sources:  Dr.

Kay, Plaintiff's treating neurologist, who treated Plaintiff's migraines and fibromyalgia; Dr.

Burns, who treated Plaintiff's lower extremities; and Dr. Dougherty, a consulting examiner.[1]

### 1.  Plaintiff's Credibility

The diminished weight that the ALJ assigned to the opinions of Drs. Kay and Burns was

based, in part, on the fact that the opinions relied on Plaintiff's subjective pain complaints.

---

[1] I note that state agency non-examining consultant Dr. Fox completed an RFC assessment on June 8, 2012.  The
ALJ gave Dr. Fox's opinion "some weight," as it supports a finding of not disabled.   Dr. Fox's review included Dr.
Dougherty's report, but did not include the records or opinions of treating physicians Burns and Kay.

Because the ALJ found Plaintiff not entirely credible, that finding affected his analysis of the treating sources' opinions. Although Plaintiff challenges this aspect of the ALJ's reasoning in the context of the "treating physician rule," the ALJ's underlying credibility assessment merits separate mention.

It is well-recognized that due to its presentation primarily via subjective complaints, fibromyalgia presents distinctive issues in the disability context.

> Fibromyalgia syndrome is a common and chronic disorder characterized by widespread muscle pain, fatigue, and multiple tender points.... Tender points are specific places on the body - on the neck, shoulders, back, hips and upper and lower extremities, where people with fibromyalgia feel pain in response to slight pressure." "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms…." Symptoms associated with fibromyalgia include "pain all over," fatigue, disturbed sleep, stiffness, and tenderness occurring at eleven of eighteen focal points.

Henderson v. Astrue, 887 F. Supp. 2d 617, 634 (W.D. Pa. 2012) (quoting Lintz v. Astrue, 2009 U.S. Dist. LEXIS 39987 (W.D.Pa. May 11, 2009)) (citations omitted).

"Because objective tests may not be able to verify a diagnosis of fibromyalgia, the reports of treating physicians, as well as the testimony of the claimant, become even more important in the calculus for making a disability determination." Perl v. Barnhart, 2005 U.S. Dist. LEXIS 3776, at *3 (E.D. Pa. Mar. 10, 2005). Therefore, "in cases involving fibromyalgia, …consideration of a plaintiff's subjective complaints are given an elevated importance." McIntire v. Colvin, 2014 U.S. Dist. LEXIS 181227, at *94 (N.D. W. Va. Sept. 24, 2014). An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." Hayes v. Colvin, 2015 U.S. Dist. LEXIS 128561, at *8 (W.D. Pa. Sept. 24, 2015).

Here, the ALJ stated that Plaintiff's complaints were "not entirely credible," because "claimant's limited medical history is inconsistent with and unsupportive of the claimant's allegations of disability." Following this statement, pages 18 through 21 of the decision recounted in detail Plaintiff's extensive medical history, which involves repeated visits to medical providers and various diagnoses and treatments, from 2011 through 2013. While many of those visits involved generally normal examinations, many were accompanied by diagnoses or observations of abnormalities, such as a 2013 diagnosis of fibromyalgia and diagnoses of migraine headaches. The ALJ also reported objective evidence not based on Plaintiff's complaints, such as wrist surgery; several ankle injuries, including fracture, and ankle surgery. It is unclear why this lengthy medical history was deemed "limited." Likewise, it is unclear how her history is inconsistent with and unsupportive of Plaintiff's allegations.

The ALJ also found that "the course of medical treatment and the use of medication in this case are not consistent with disabling impairments." He then observed that Plaintiff takes medications and has undergone surgery. It is unclear, again, why the ALJ found her use of medications and surgical history inconsistent with disabling symptoms. Further, the ALJ noted one physician's "suspicion" of malingering due to Plaintiff's changing symptoms and continued failure to improve. That suspicion arose, however, prior to a diagnosis of fibromyalgia – a condition which involves chronic pain all over.[2] No other medical source suggested a suspicion that Plaintiff was malingering.

The ALJ's credibility determinations are entitled to great deference, and his approach to Plaintiff's credibility would not alone be grounds for remand in this matter. Because I remand on other grounds, however, as discussed infra, the ALJ should take the opportunity to reconsider

---

[2] Absent a clear, affirmative diagnosis of actual malingering, and absent any suggestion of malingering by other treating or examining doctors, a mere suspicion or possibility of malingering may be insufficient to undermine a claimant's credibility. See Cha Yang v. Comm'r of SSA, 488 Fed. Appx. 203, 205 (9th Cir. 2012).

or clarify his determination regarding Plaintiff's subjective complaints. The circumstances here, taken together, call for greater specificity. I emphasize that fibromyalgia patients are neither <u>per se</u> entitled to disability benefits nor exempt from a finding of malingering; moreover, of course, constant complaints to medical providers do not equate to trustworthiness. However, it is incumbent upon adjudicators to be as clear and specific as possible when explaining their judgments of the believability of those diagnosed with this poorly understood disorder, which has significant subjective components. This is particularly true in a case such as this one, in which the record is liberally and consistently sprinkled with recurrent visits to physicians with complaints of pain, and a fibromyalgia diagnosis from a treating source.

## 2. Treating Physicians

Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the record]," it will be given "controlling weight." <u>Winward v. Comm'r Soc. Sec</u>., 2015 U.S. App. LEXIS 19599, at **4-5 (3d Cir. 2015). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence." <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999). Accordingly, an ALJ may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." <u>Fletcher v. Colvin</u>, 2015 U.S. Dist. LEXIS 16517, at *27 (D. Del. Feb. 11, 2015). On the other hand, if a treating physician's opinion is based solely on subjective pain complaints, and those complaints are otherwise unsupported or properly found incredible, an ALJ may discount that opinion. <u>See Olivares v. Comm'r of Soc. Sec</u>., 93 Fed. Appx. 457 (3d Cir. 2004); <u>Kelley v. Astrue</u>, 2011 U.S. Dist. LEXIS 144875 (D. Del. Dec. 16, 2011). The treating source's opinion, particularly a specialist,

is given elevated importance when fibromyalgia is present.  McIntire v. Colvin, 2014 U.S. Dist. LEXIS 181227, at *94 (N.D. W. Va. Sept. 24, 2014).

In this case, Dr. Kay completed a physical capacity evaluation form on September 11, 2013, noting that Plaintiff bore diagnoses of common migraine and fibromyalgia. She noted symptoms of daily headaches, and diffuse body pain due to the fibromyalgia.  She also opined, inter alia, that Plaintiff would miss eight days of work per month.  When asked to identify support for the limitations and restrictions to which she opined, she stated that Plaintiff had 16 out of 18 fibromyalgia tenderpoints present on exam.[3]  The ALJ gave Dr. Kay's opinion regarding absenteeism little weight, on grounds that headache frequency was based on Plaintiff's unreliable subjective complaints, and that the opinion was inconsistent with Dr. Kay's notes, which reflected significant improvement with treatment in May, 2013 and one to two headaches per week.   Dr. Kay's stated limitations, however, were expressly based on her findings relating to fibromyalgia, and not on her findings regarding headaches.  Accordingly, the frequency or severity of Plaintiff's headaches had no bearing on Dr. Kay's attendance opinion, and diminished headache symptoms thus cannot provide grounds for rejecting that opinion. As regards the reasoning related to Plaintiff's fibromyalgia, improvement not necessarily inconsistent with Dr. Kay's opinions; improvement does not necessarily mean that Plaintiff's impairment no longer imposes functional limitations.  See, e.g., Ghanim v. Colvin, 763 F.3d 1154 (9th Cir. 2014).  In considering the ALJ's approach to Dr. Kay's opinion, I am informed by the principles recounted supra, relating to fibromyalgia in particular, and those general principles that limit me to assessing only the reasoning cited by the ALJ.

---

[3] "At one point fibromyalgia was only diagnosed if a patient had 11 out of 18 positive tender or trigger points. The trigger or tender point testing was actually developed only for research studies but medical professionals began to use it for diagnostic purposes."  Decker v. Colvin, 2015 U.S. Dist. LEXIS 80672, at *3 n. 4 (M.D. Pa. June 22, 2015)

Dr. Burns, who treated Plaintiff for her ankle and foot, also completed a physical capacity evaluation form, on September 9, 2013. He noted several restrictions, including that Plaintiff would leave early or miss work fifteen days per month, based on continued foot pain and numbness. Dr. Burns' treatment notes, signed on September 9, 2013, reflect a follow up visit after Plaintiff's June 11, 2013 surgery. In those notes, he wrote, "She's aware [sic] will take several months for full recovery." The ALJ found that this notation indicated that Plaintiff's condition was not expected to last "indefinitely," or for more than several months. Moreover, the ALJ observed that because Dr. Burns noted that Plaintiff was doing well radiographically, his opinion was based solely on Plaintiff's subjective complaints.[4] Accordingly, he afforded Dr. Burns' opinion "little weight." Dr. Burns did not indicate that Plaintiff was malingering, or that he doubted her pain complaints; instead, he stated that her pain was not uncommon following such surgery. On remand, when the ALJ revisits Plaintiff's subjective pain complaints in light of today's Opinion, he should also revisit Dr. Burns' opinion.

## C. RFC

Plaintiff next challenges the ALJ's RFC finding. In particular, Plaintiff complains that the ALJ failed to include any limitations regarding the upper extremities, including her severe impairments of wrist disorder and wright wrist tendinitis. Moreover, Plaintiff complains that he failed to include limitations regarding sitting and meeting attendance requirements.

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional, but rather only the ones that she finds are credibly established by the record." See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007).

The ALJ found Plaintiff's wrist conditions severe, and recounted a significant treatment history relating to her wrist pain, including surgery. Dr. Dougherty examined Plaintiff on June 1,

---

[4] An "indefinite" condition is not required in this context.

2012. She diagnosed Plaintiff, <u>inter alia</u>, with neuropathic pain and left wrist ligament damage. Accordingly, she determined that Plaintiff was limited in many respects, including reaching, handling, fingering, and feeling. The ALJ gave Dr. Dougherty's opinion "some weight," as generally supported by the evidence and consistent with the record as a whole. The ALJ gave little weight to her opinion that Plaintiff could only sit for four hours due to "being antsy," as based on a subjective complaint. I find no error in that regard. He did not, however, explain why he did not include in the RFC any limitations regarding Plaintiff's upper extremities. On the record, therefore, I cannot determine why the ALJ chose not to incorporate those limitations. Accordingly, on remand, the ALJ should either reconsider or clarify his approach to limitations regarding Plaintiff's upper extremities.

## CONCLUSION

In sum, this matter will be remanded for additional consideration of Dr. Kay's opinion regarding the functional limitations stemming from Plaintiff's fibromyalgia. Moreover, the ALJ should clarify his conclusions regarding Plaintiff's credibility, and the assessment of the opinions of treating sources based thereon, and limitations relating to her upper extremities.

An appropriate Order follows.

**ORDER**

AND NOW, this 3rd day of December, 2015, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is GRANTED, and Defendant's DENIED.  This matter is remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court
